Tennyson & Wiggington
Attorneys at Law
1800 West End Avenue
Suite 800
Nashville, TN 37219
(615) 506-3108
info@nashville-law.com

*Attorney for Plaintiff*

# In the United States District Court for the Middle District of Tennessee

| | |
|---|---|
| **OnSomble, Inc.,** | Civil Action No. _____ |
| Plaintiff; | |
| v. | **Jury Trial Demanded** |
| **Maria O'Rourke,** | |
| Defendant. | |

# Complaint for Violation of Trademark, Violation of Trade Dress, Trade Dress Dilution by Blurring, Trade Dress Dilution by Tarnishment, Misappropriation of Trade Secrets, Tortious Interference with Contract, Tortious Interference with Prospective Business Relationships, and Negligent Interference with Prospective Economic Advantage

Plaintiff, OnSomble, Inc., for its Complaint against Maria O'Rourke, states as follows:

## Summary

OnSomble is the sole proprietor of the "Role Based Practice Model", a well-established and unique training system that OnSomble markets exclusively to hospitals. The "Role Based Practice Model" is specifically designed to increase efficiency, improve morale and reduce costs in the hospital setting by effectively structuring staff relationships, interactions and communications. OnSomble's trademarks and trade dress relating to the Role-Based Practice Model are distinct, clearly established assets with a history of annual sales in the millions. OnSomble has filed this complaint because Defendant Maria O'Rourke ("O'Rourke") has been unlawfully marketing and selling the system to OnSomble's existing and prospective customers by disparaging OnSomble while claiming that she is the owner of the "Role Based Practice Model". In this way, O'Rourke has unlawfully stolen millions of dollars from OnSomble selling the "Role Based Practice Model" to hospitals that otherwise would have bought the system from OnSomble. Ms. O'Rourke's actions have destroyed OnSomble's existing and potential relationships in the industry and brought the company to the verge of financial collapse.

## The Parties

1. Plaintiff OnSomble, Inc. ("OnSomble") is a domestic corporation duly organized and incorporated under the laws of the state of Nevada, with its principal place of business in Nashville, TN.

2. Defendant Maria O'Rourke (the "Defendant") is a citizen and resident of the State of California.

-2-

## Jurisdiction and Venue

3.  The jurisdiction of this court is established by The Lanham Act §43 as codified at 15 USC §§ 1121, 1125 and 1127, which vest original jurisdiction exclusively in the federal courts for all civil actions that allege a misappropriation of trademark trade dress, blurring or tarnishment in violation of 15 USC § 1125.

4.  Pursuant to 28 USC § 1391(b)(2), the proper venue for this matter is the United States District Court for the Middle District of Tennessee because a substantial part of the property that is the subject of this action is situated in Nashville Tennessee. The property that is the subject of this action is OnSomble's "Role Based Practice Model". Intangible intellectual property such as OnSomble's "Role Based Practice Model" follows the business situs rule and is therefore situated at the location of OnSomble's principal place of business. *In re Addax Music Co.*, No. 28376 TSB-H-85(1)(C), 1984 WL 179619 (N.Y. Dep't Tax. & Fin. Dec. 14, 1984). OnSomble's principle place of business is Nashville, Tennessee.

5.  This Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 USC § 1367 because Plaintiff's state law claims are so related to the federal claims for which this Court has original jurisdiction that the state claims form a part of the same case or controversy. ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.") Because federal district court has original jurisdiction over the trademark claims and because the other claims are so

-3-

Case 3:16-cv-00493   Document 1   Filed 03/04/16   Page 3 of 26 PageID #: 3

related to the trademark claims that they form part of the same case and controversy, this Court has supplemental jurisdiction for the remainder of the claims. (Tenn. Code Ann. §20-4-101; and Tenn. Code Ann. §20-4-104.)

## General Allegations

6. Defendant developed a professional practice model called the Role-Based Practice Model for use in hospitals to train and organize personnel.

7. Defendant developed this model for her company, Role-Based Practice Solutions ("RBPS").

8. The Role-Based Practice Model was formalized in a series of programs, software, and guides.

9. Defendant, through her company, sold this material to medical organizations, along with consultation and training sessions in which she would train and organize the medical organizations' staff.

10. On April 23, 2012, OnSomble, formerly the Nurse Company, Inc., purchased RBPS from the Defendant.

11. OnSomble purchased all intellectual property belonging to Role-Based Practice Solutions. This intellectual property included all trademarks, copyrights, trade secrets, and trade dress owned by Role-Based Practice Solutions.

12. OnSomble is the owner of all intellectual property rights, including but not limited to all trademarks, copyrights, trade secrets, and trade dress, related to the Role-Based Practice Model.

13. One component of the intellectual property is a diagram of the Role-Based Practice Model, the O'Rourke Model of the Professional Role ("RBPM"). The RBPM Venn diagram is divided into three sections describing a relationship between Practitioner, Leader, and Scientist. (See

-4-

Exhibit A). The term "Transferor" bridges the gaps between the larger labels, and the term, "Professional Role" is stamped in the middle. The diagram is a series of shades of green, blue, and purple.

14. Another component of the intellectual property purchased by OnSomble is a list of "Trademarked 'Tag' Lines." One such tag line specifically sold to OnSomble is "Role-Based Practice Solutions." Further, OnSomble purchased the URL www.rolebasedpractice.com.

15. OnSomble employed the Defendant as Chief Nurse Executive from April 27, 2012 until October 16, 2013.

16. On September 16, 2013, Defendant tendered her resignation to OnSomble.

17. On June 17, 2013, OnSomble entered into a written contract with Trinity Health ("Trinity"), one of the largest multi-institutional Catholic health care delivery systems in the nation, for OnSomble to provide Role-Based Practice Model consultation.

18. Dr. Gay Landstrom was, at the time, the Chief Nursing Officer of Trinity. Landstrom was a designated signatory agent for Trinity Health, and she signed the agreement on behalf of Trinity Health.

19. Defendant resigned from OnSomble during the middle of the scope of work being performed for Trinity. OnSomble salvaged the relationship with Trinity and completed the work by hiring other consultants at a significant amount above the market rate for nursing consultants.

20. On June 3, 2014, Landstrom was hired as Chief Nursing Officer for Dartmouth-Hitchcock Medical Center ("Dartmouth").

21. When Landstrom became the Chief Nursing Officer for Dartmouth, OnSomble and Landstrom were in negotiations for OnSomble to provide substantially similar contract work for

Dartmouth as had been provided by OnSomble for Trinity. Dartmouth was an active prospective business relationship and prospective economic advantage.

22. On October 12, 2014, Gay Landstrom informed OnSomble that Dartmouth would not be contracting with OnSomble. Landstrom e-mailed OnSomble stating that she did not "anticipate having any needs relative to your company [OnSomble] for the next year. Too many other concerns right now."

23. At the time that Landstrom e-mailed OnSomble, Defendant was in parallel negotiations with Landstrom and Dartmouth. Defendant instructed Landstrom to sign a contract with her instead of OnSomble.

24. In the Spring of 2015, Dartmouth published material on its website which included diagrams based upon OnSomble's Role-Based Practice Model. In the publication, Dartmouth gave credit to the Defendant for implementing OnSomble's Role-Based Practice Model.

25. Dartmouth published on its website the Professional Practice Model ("Dartmouth PPM"), a diagram designed by and sold to Dartmouth by Defendant. The Dartmouth PPM is a Venn diagram divided into four sections labeled Scientist, Leader/Decision Maker, Practitioner, and Transferor, with Role-Based Practice in the center. (See Exhibit B). Similarly, OnSomble's Venn diagram is also divided into three sections describing a relationship between Practitioner (the same as the Dartmouth PPM), Leader (Dartmouth PPM uses Leader/Decision Maker), and Scientist (same as the Dartmouth PPM). (See Exhibit A). Both the PPM and OnSomble's model are a series of shades of green, blue, and purple.

26. The Dartmouth PPM is extraordinarily close in design and description to OnSomble's Model of the Professional Role.

27. The contents of the Dartmouth-Hitchcock Professional Practice Model and the content of Defendant's services to Dartmouth are directly related to the content that Defendant sold to OnSomble, which the Defendant did not have the right to perform or sell, and Dartmouth did not have the right to purchase. Defendant used all of the terminology that is OnSomble's intellectual property rights, including but not limited to Role Clarity, Professional Nursing Practice, the dimensions of Leader, Scientist, Transferor, and Practitioner, and other violations of OnSomble's intellectual property rights. Dartmouth's online publication states: "our PPM was developed in the spring of 2015 by Registered Nurses serving in various roles across our system under the guidance of Dr. Maria O'Rourke [the Defendant]. Dr. O'Rourke's life work has been to improve patient care through the alignment of care delivery with the standardization of nursing practice."

28. Landstrom, through her previous supervision of OnSomble's provision of services to Trinity, had express and constructive knowledge that OnSomble owned the intellectual property offered for sale by Defendant.

29. Landstrom had express and constructive knowledge that Defendant sold Dartmouth OnSomble's intellectual property.

30. Defendant and Landstrom both profited from the Defendant's sale of OnSomble's intellectual property to Dartmouth.

31. When Defendant terminated her employment, OnSomble had an open scope of work with Stanford University Medical Center ("Stanford"). Defendant defamed OnSomble and offered her services directly to Stanford, offering to provide services which violate OnSomble's intellectual property rights.

-7-

32. Stanford chose to terminate the relationship with OnSomble, and breach its contract with OnSomble. Defendant's actions caused OnSomble to lose one of its most lucrative clients and economic relationships.

33. When Defendant terminated her employment, OnSomble had an open scope of work with Kaiser Permanente ("Kaiser"). Defendant defamed OnSomble and offered her services directly to Kaiser, offering to provide services which violate OnSomble's intellectual property rights.

34. Kaiser chose to terminate the relationship with OnSomble, and breach its contract with OnSomble. Defendant's actions caused OnSomble to lose a lucrative client and an economic relationship.

35. When Defendant terminated her employment, OnSomble had an open scope of work with Henry Mayo Newhall Memorial Hospital ("HMN"). Defendant defamed OnSomble and offered her services directly to HMN, offering to provide services which violate OnSomble's intellectual property rights.

36. HMN chose to not to continue the relationship with OnSomble. Defendant's actions caused OnSomble to lose a lucrative client and an economic relationship.

37. When Defendant terminated her employment, OnSomble had an open scope of work with the U.S. Department of Veteran's Affairs (the "VA"). Defendant defamed OnSomble and offered her services directly to the VA, offering to provide services which violate OnSomble's intellectual property rights.

38. The VA chose not to continue the relationship with OnSomble. Defendant's actions caused OnSomble to lose a lucrative client and an economic relationship.

39. Defendant continues to directly compete with OnSomble by offering healthcare organizations a product that violates OnSomble's intellectual property rights.

40. Defendant has been attending and presenting in conferences where she markets herself using content that uses OnSomble's intellectual property. Defendant disparages and defames OnSomble at these presentations and conferences.

41. Defendant currently teaches at UCSF, and works at Scottsdale Healthcare as the Inaugural Distinguished Scholar in Residence. Defendant disseminates OnSomble's trade secrets and other intellectual property rights in violation of OnSomble's intellectual property rights.

42. The Defendant has been saying and continues to say in the marketplace that OnSomble stole her company without paying for it. This is a false statement and directly hurts OnSomble's credibility.

43. The Defendant expressed that she was deliberately trying to "bankrupt OnSomble."

44. The Defendant has sold and continues to sell to clients the content that she sold to OnSomble, and to which OnSomble has an exclusive right to sell, implement, and use.

45. Defendant has been informed by OnSomble that she has been selling OnSomble's intellectual property. The Defendant continues to sell to clients OnSomble's intellectual property.

## Causes of Action

## Count 1. Violation of Trademark under Lanham Act §45, 15 U.S. Code § 1127 and Tenn. Code Ann. § 47-25-1701.

46. All allegations set forth above are incorporated herein by reference as if fully set forth.

47. OnSomble purchased the trademarked 'tag' line, "Role-Based Practice Solutions."

48. OnSomble Purchased the URL www.rolebasedpractice.com.

49. Role-Based Practice qualifies as a trademark.

50. OnSomble uses Role-Based Practice in commerce to denote OnSomble's professional practice model and accompanying professional development services.

51. OnSomble uses Role-Based Practice to identify and distinguish its professional practice model from other competing professional practice model.

52. Role-Based Practice is distinct and has a secondary meaning in the healthcare community. Role-Based Practice specifically refers to the professional practice model and services provided by OnSomble, and members of the healthcare community associate Role-Based Practice with the product owned and sold by OnSomble.

53. Role-Based Practice is not generic. In all use within the healthcare community, Role-Based Practice is uniformly used with proper capitalization and typically includes a trademark symbol, indicating that it refers not to a descriptive term, but to OnSomble's product and intellectual property.

54. Defendant's use of OnSomble's trademark, Role-Based Practice does not, in any way, qualify as fair use.

55. Defendant sold OnSomble the right to the trademark Role-Based Practice; thus, OnSomble preserves priority in use.

56. OnSomble has never abandoned the use of Role-Based Practice.

57. Defendant has violated OnSomble's trademark.

58. Defendant has used the trademark in commerce by including Role-Based Practice in her professional practice model materials which she has sold to healthcare organizations.

59. Defendant's use of OnSomble's trademark is a copy, colorable reproduction, and counterfeit because it is identical to the use of Role-Based Practice as used by OnSomble.

60. Defendant has used OnSomble's trademark in connection with the sale, offering, distribution, and advertising of Defendant's professional practice model.

61. Defendant's use of Role-Based Practice in her professional practice model is likely to cause confusion because Role-Based Practice is used ~~exclusively~~ within the healthcare community to denote OnSomble's professional practice model and services. Defendant, in using Role-Based Practice, is inviting comparison with OnSomble's model and is likely to cause confusion with healthcare professionals who are familiar with OnSomble's Role-Based Practice.

62. Patients who visit hospitals in which Defendant's professional practice model has been implemented are likely to be confused because patients who see that such hospitals are using Role-Based Practice will not be able to readily differentiate between the professional practice models offered by Defendant and OnSomble.

63. Defendant violated OnSomble's trademark with the knowledge that such imitation was intended to be used to cause confusion, to cause mistake, and to deceive.

64. OnSomble has suffered economic damages through Defendant's use of its trademark to induce contracts that otherwise would have been available to OnSomble.

**Count 2. Violation of Service Mark under Lanham Act §45, 15 U.S. Code § 1127 and Tenn. Code Ann. § 47-25-1701.**

65. All allegations set forth above are incorporated herein by reference as if fully set forth.

66. OnSomble purchased the trademarked 'tag' line, "Role-Based Practice Solutions."

67. Defendant sold the URL www.rolebasedpractice.com to OnSomble.

68. Role-Based Practice qualifies as a service mark.

69. OnSomble uses Role-Based Practice in commerce to denote OnSomble's professional practice model and accompanying professional development services.

70. OnSomble uses Role-Based Practice to identify and distinguish its professional consulting services from other competing professional consulting services.

71. Role-Based Practice is distinct and has a secondary meaning in the healthcare community. Role-Based Practice specifically refers to the services provided by OnSomble, and members of the healthcare community associate Role-Based Practice with the services provided by OnSomble.

72. Role-Based Practice is not generic. In all use within the healthcare community, Role-Based Practice is uniformly used with proper capitalization and typically includes a trademark symbol, indicating that it refers not to a descriptive term, but to OnSomble's product.

73. Defendant's use of OnSomble's trademark, Role-Based Practice does not, in any way, qualify as fair use.

74. Defendant sold OnSomble the right to the trademark, Role-Based Practice; thus, OnSomble preserves priority in use.

75. OnSomble has never abandoned the use of Role-Based Practice.

76. Defendant has violated OnSomble's service mark.

77. Defendant has used the service mark in commerce by including Role-Based Practice in her professional consulting services which she has provided to healthcare organizations.

-12-

78. Defendant's use of OnSomble's trademark is a copy, colorable reproduction, and counterfeit because it is used to identify the same types of consulting services provided by OnSomble.

79. Defendant has used OnSomble's service mark in connection with the sale, offering, distribution, and advertising of Defendant's professional consulting services.

80. Defendant's use of Role-Based Practice in her professional consulting services is likely to cause confusion because Role-Based Practice is used ~~exclusively~~ within the healthcare community to denote OnSomble's professional practice model and services. Defendant, in using Role-Based Practice, is inviting comparison with OnSomble's consulting services and is likely to cause confusion with healthcare professionals who are familiar with OnSomble's Role-Based Practice. Healthcare professionals who receive consulting services from Defendant are likely to believe such services to be associated with the consulting services provided by OnSomble.

81. Defendant violated OnSomble's service mark with the knowledge that such imitation was intended to be used to cause confusion, to cause mistake, and to deceive.

82. OnSomble has suffered economic damages through Defendant's use of its service mark to induce contracts that otherwise would have been available to OnSomble.

**Count 3. Violation of Trade Dress under Lanham Act §43, 15 U.S. Code § 1125.**

83. All allegations set forth above are incorporated herein by reference as if fully set forth.

84. The Dartmouth PPM sold to Dartmouth by Defendant violates OnSomble's trade dress.

85. OnSomble's diagram describing the RBPM is distinct. It has a particular look which distinguishes it within the healthcare community.

-13-

86. The RBPM is, by itself, non-functional. It merely describes the broad outline of OnSomble's professional practice model.

87. The RBPM is famous within the healthcare community. Several hospitals even use the RBPM on their website with permission from OnSomble.

88. Taken as a whole, the RBPM is famous separate and apart from Role-Based Practice. Taken as a whole, the diagram itself is famous within the healthcare community.

89. The Dartmouth PPM developed by Defendant looks substantially similar to the RBPM. This is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant and OnSomble. Further, it is likely to cause confusion as to the origin, sponsorship, or approval of Defendant's work with regard to OnSomble.

90. OnSomble has suffered economic damages through Defendant's use of its trade dress to promote her product, inducing contracts that otherwise would have been available to OnSomble.

**Count 4. Trade Dress Dilution by Blurring under Lanham Act §43, 15 U.S. Code § 1125.**

91. All allegations set forth above are incorporated herein by reference as if fully set forth.

92. The Dartmouth PPM developed by Defendant and sold to Dartmouth violates OnSomble's trade dress.

93. The RBPM is distinct. It has a particular look which distinguishes it within the healthcare community.

94. The RBPM is, by itself, non-functional. It merely describes the broad outline of OnSomble's professional practice model.

-14-

95. The RBPM is famous within the healthcare community. Several hospitals even use the RBPM on their website with permission from OnSomble.

96. Taken as a whole, the RBPM is famous separate and apart from Role-Based Practice. Taken as a whole, the diagram itself is famous within the healthcare community.

97. The RBPM and the Dartmouth PPM developed by Defendant look extraordinarily similar.

98. The RBPM has inherent and acquired distinctiveness through its use in the healthcare community.

99. OnSomble engages exclusively in the use of the RBPM except where provided in a limited license for a client.

100. The RBPM is widely recognized within the healthcare community.

101. Defendant intended to associate the Dartmouth PPM with the RBPM to promote her professional practice model.

102. Upon information and belief, healthcare professionals have incorrectly associated the Dartmouth PPM with the RBPM.

103. Defendant willfully intended to trade on the recognition of OnSomble's likeness.

104. OnSomble has suffered economic damages because its trade dress has been blurred in the marketplace, and confusion has arisen between OnSomble's RBPM and the Dartmouth PPM.

**Count 5. Trade Dress Dilution by Tarnishment under Lanham Act §43, 15 U.S. Code § 1125.**

105. All allegations set forth above are incorporated herein by reference as if fully set forth.

106. The Dartmouth PPM developed by Defendant and sold to Dartmouth violates OnSomble's trade dress.

107. OnSomble's diagram describing the RBPM is distinct. It has a particular look which distinguishes it within the healthcare community.

108. The RBPM is, by itself, non-functional. It merely describes the broad outline of OnSomble's professional practice model.

109. The RBPM is famous within the healthcare community. Several hospitals even use the RBPM on their website with permission from OnSomble.

110. Taken as a whole, the RBPM is famous separate and apart from Role-Based Practice. Taken as a whole, the diagram itself is famous within the healthcare community.

111. The RBPM and the Dartmouth PPM developed by Defendant look extraordinarily similar.

112. The RBPM has inherent and acquired distinctiveness through its use in the healthcare community.

113. OnSomble engages exclusively in the use of the RBPM except where provided in a limited license for a client.

114. The RBPM is widely recognized within the healthcare community.

115. Upon information and belief, association arising from the similarity between the Dartmouth PPM Model and the RBPM has harmed the reputation of the RBPM.

116. Defendant willfully intended to harm the reputation of OnSomble's trade dress.

117. OnSomble has suffered economic damages because its trade dress has been tarnished by the similarity between OnSomble's RBPM and the Dartmouth PPM.


**Count 6. Misappropriation of Trade Secrets under Tenn. Code Ann. §§ 47-25-1701 *et. seq*.**

118. All allegations set forth above are incorporated herein by reference as if fully set forth.

-16-

119. The critical mass program, the coach certification program, and the manager program along with the Role-Based Practice Model are trade secrets.

120. The programs and model are a series of methods, techniques, processes, and programs.

121. The programs and model derive their independent economic value from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain value from its disclosure or use. OnSomble sells to healthcare professionals the programs and consulting services required to make use of the Role-Based Practice Model. If this information were generally known, any healthcare professional could readily implement the program; thus, the programs and model derive their value from being not generally known.

122. The programs and model are the subject of efforts that are reasonable under the circumstances to maintain its secrecy. OnSomble requires all employees to sign contracts which include non-disclosure agreements. OnSomble requires all clients to sign contracts with non-disclosure agreements. These non-disclosure clauses outline the limited situations in which an employee or client may reveal OnSomble's proprietary information. OnSomble does not publish nor publicly disclose information about the programs and model except for the limited purpose of advertising using information which is too broad to be used to replicate the programs and model.

123. Defendant was under a duty to maintain OnSomble's trade secret and limit its use because Defendant had sold the programs and model to OnSomble.

124. Defendant had knowledge that she was offering services to clients which included OnSomble's trade secrets.

ONSOMBLE, INC. V. MARIA O'ROURKE

125. Defendant disclosed and used OnSomble's trade secrets without express or implied permission of OnSomble.

126. Thus, Defendant misappropriated OnSomble's trade secrets.

127. Defendant willfully and maliciously misappropriated OnSomble's trade secrets.

128. OnSomble has suffered economic damages by losing contracts which would have been fulfilled by OnSomble but for the use of OnSomble's trade secrets by Defendant.

129. OnSomble has suffered economic damages by having its trade secrets, the method by which OnSomble participates in the marketplace, revealed to healthcare professionals who had not contracted with OnSomble, preventing OnSomble from contracting with such healthcare professionals.

## Count 7. Tortious Interference with Contract under Tenn. Code Ann. § 47-50-109

130. All allegations set forth above are incorporated herein by reference as if fully set forth.

131. Defendant, after breaching her Employment Contract, solicited business from healthcare organizations which she knew had pre-existing contractual obligations with OnSomble.

132. Defendant, after breaching her Employment Contract, solicited business from healthcare organizations which she knew had pre-existing business relationships with OnSomble.

133. Defendant solicited business from these healthcare organizations with the intent to convince these healthcare organizations to breach their contracts with OnSomble and to end their business relationships with OnSomble.

134. Defendant instructed clients that were in the contract phase of negotiations with OnSomble to require that a clause be added to the contract, which required that the Defendant was to be

-18-

the sole consultant for that contract. Defendant was listed as the sole facilitator and speaker for several of Plaintiff's contracts with healthcare organizations. The Defendant terminated her employment with OnSomble as soon as this clause was added to all contracts being negotiated at the time.

135.     Defendant, when she breached her Employment Contract, disrupted OnSomble's ability to perform obligations under the contracts and prevented OnSomble from receiving the promised performance from said contracts because OnSomble could no longer use Defendant as the sole facilitator and speaker.

136.     Defendant, when she breached her Employment Contract and solicited business from healthcare organizations which she knew had contracts and prior business relationships with OnSomble, acted to prevent OnSomble from establishing and maintaining these business relationships.

137.     Defendant intentionally and maliciously caused other healthcare organizations not to enter into business relationships with OnSomble by soliciting their business and disparaging OnSomble in the marketplace.

138.     Defendant she did not have any privilege to induce such a breach of contract.

139.     Healthcare organizations, as a direct result of Defendant's interference, breached their contracts with OnSomble.

140.     OnSomble has suffered significant economic loss due to Defendant's interference with contracts. OnSomble has lost several contracts and has been unable to establish business relationships with healthcare organizations which were once business partners. These damages

were a direct result of Defendant interfering with OnSomble's contracts and business relationships.

141. Defendant acted intentionally and with malice. Her intent was not merely to obtain contracts in the market place, but also to harm OnSomble specifically.

## Count 8. Tortious Interference with Prospective Business Relationships under Tenn. Code Ann. § 47-50-109

142. All allegations set forth above are incorporated herein by reference as if fully set forth.

143. Defendant solicited business from healthcare organizations which she knew had prospective business relationships with OnSomble.

144. Defendant solicited business from these healthcare organizations with the intent to convince these healthcare organizations not to enter into any business relationships with OnSomble.

145. Defendant has used her position within the healthcare community to disparage OnSomble and prevent potential business partners from contracting with or negotiating with OnSomble.

146. Defendant, when she solicited business from healthcare organizations which she knew had potential business relationships with OnSomble, acted to prevent OnSomble from establishing these business relationships.

147. Defendant intentionally and maliciously caused other healthcare organizations not to enter into business relationships with OnSomble by soliciting their business and disparaging OnSomble in the marketplace.

148. Defendant did not have any privilege to induce such a breach of contract.

-20-

149.    Healthcare organizations, as a direct result of Defendant's interference, did not enter into business relationships with OnSomble.

150.    OnSomble has suffered significant economic loss due to Defendant's interference with prospective business relationships. OnSomble has lost several potential contracts and has been unable to establish business relationships with healthcare organizations. These damages were a direct result of Defendant interfering with OnSomble's contracts and business relationships.

151.    Defendant acted intentionally and with malice. Her intent was not merely to obtain contracts in the market place, but also to harm OnSomble specifically.


## Count 9. Negligent Interference with Prospective Economic Advantage

152.    All allegations set forth above are incorporated herein by reference as if fully set forth.

153.    OnSomble had many business relationships with healthcare organizations which contained a reasonably probable future economic benefit to OnSomble through contracting with said healthcare organizations.

154.    Defendant knew of these relationships. She was an employee of OnSomble and worked with OnSomble to provide presentations and contract proposals to these healthcare organizations.

155.    Defendant was aware that if she did not act with due care, her actions would interfere with this relationship and cause OnSomble to lose in whole or in part probable contracts with these healthcare organizations.

156.    Defendant owed a duty of care to OnSomble not to interfere with these contracts.

157.    In soliciting business directly from these healthcare organizations and in disparaging OnSomble in the marketplace, Defendant negligently interfered with these business contracts, and as a direct result, OnSomble was actually interfered with and disrupted, and OnSomble lost in whole and in part many of the contracts reasonably expected from the healthcare organizations.

158.    Defendant was not privileged to interfere with these business relationships.

## JURY DEMAND

159.    Plaintiff demands a trial by jury on any issue so triable.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff claims monetary damages against Defendants in an amount to be determined at trial, plus costs, and for any further relief that this Honorable Court deems necessary and appropriate, including:

**On the First Cause of Action**

1.  Defendant's profits for any sale of any good or service bearing OnSomble's trademark for an amount to be determined at trial;

2.  Damages sustained by OnSomble equivalent to the gross loss of contract revenue for any sale made by Defendant for any sale of good or service bearing OnSomble's trademark for an amount to be determined at trial;

3.  Costs of the action and attorney's fees;

4. Treble Damages for an amount to be determined at trial because Defendant intentionally used OnSomble's trademark knowing such a mark was a counterfeit mark in connection with the sale, offering for sale, and distribution of Defendant's goods and services;

5. Injunctive relief barring Defendant from using OnSomble's trademark without permission;

6. Destruction of all infringing articles;

7. Pre- and post-judgment interest on all sums; and

8. Any further equitable relief this court deems appropriate.

**On the Second Cause of Action**

1. Defendant's profits for any sale of any good or service bearing OnSomble's service mark for an amount to be determined at trial;

2. Damages sustained by OnSomble equivalent to the gross loss of contract revenue for any sale made by Defendant for any sale of good or service bearing OnSomble's service mark for an amount to be determined at trial;

3. Costs of the action and attorney's fees;

4. Treble Damages for an amount to be determined at trial because Defendant intentionally used OnSomble's service mark knowing such a mark was a counterfeit mark in connection with the sale, offering for sale, and distribution of Defendant's goods and services;

5. Injunctive relief barring Defendant from using OnSomble's service mark without permission;

6. Destruction of all infringing articles;

7. Pre- and post-judgment interest on all sums; and,

8. Any further equitable relief this court deems appropriate.

-23-

OnSomble, Inc. v. Maria O'Rourke

**On the Third, Fourth, and Fifth Causes of Action**

1. Defendant's profits for any sale of any good or service infringing OnSomble's trade dress for an amount to be determined at trial;

2. Damages sustained by OnSomble equivalent to the gross loss of contract revenue for any sale made by Defendant for any sale of good or service infringing OnSomble's trade dress for an amount to be determined at trial;

3. Costs of the action and attorney's fees;

4. Treble Damages for an amount to be determined at trial because Defendant intentionally violated OnSomble's trade dress knowing such a distinctive design was a counterfeit mark in connection with the sale, offering for sale, and distribution of Defendant's goods and services;

5. Injunctive relief barring Defendant from using OnSomble's trade dress without permission;

6. Destruction of all infringing articles;

7. Pre- and post-judgment interest on all sums; and,

8. Any further equitable relief this court deems appropriate.

**On the Sixth Cause of Action**

1. Defendant's profits for any sale of any good or service infringing OnSomble's trade secrets for an amount to be determined at trial;

2. Damages sustained by OnSomble equivalent to the gross loss of contract revenue for any sale made by Defendant for any sale of good or service misappropriating OnSomble's trade secrets for an amount to be determined at trial;

-24-

3. Costs of the action and attorney's fees;

4. Exemplary Damages for an amount to be determined at trial because Defendant intentionally violated OnSomble's trade secrets knowing that she was under a duty not to divulge OnSomble's trade secrets and using OnSomble's trade secrets to compete directly with OnSomble in the marketplace;

5. Injunctive relief barring Defendant from using OnSomble's trade secrets without permission;

6. Destruction of all infringing articles;

7. Pre- and post-judgment interest on all sums; and,

8. Any further equitable relief this court deems appropriate.

**On the Seventh Cause of Action**

1. Defendant's profits for any sale of any good or service obtained through interfering with OnSomble's contracts and business relationships;

2. Damages sustained by OnSomble equivalent to the gross loss of contract revenue for any contract or business relationship lost as a result of Defendant's interference;

3. Costs of the action and attorney's fees;

4. Treble Damages;

5. Pre- and post-judgment interest on all sums; and,

6. Any further equitable relief this court deems appropriate.

**On the Eighth Cause of Action**

1. Defendant's profits for any sale of any good or service obtained through interfering with OnSomble's prospective business relationships;

2. Damages sustained by OnSomble equivalent to the gross loss of contract revenue for any prospective business relationship lost as a result of Defendant's interference;

3. Costs of the action and attorney's fees;

4. Treble Damages;

5. Pre- and post-judgment interest on all sums; and,

6. Any further equitable relief this court deems appropriate.

**On the Ninth Cause of Action**

1. Defendant's profits for any sale of any good or service obtained through interfering with OnSomble's reasonably probable future economic benefit;

2. Damages sustained by OnSomble equivalent to the gross loss of contract revenue for any reasonably probable future economic benefit lost as a result of Defendant's interference;

3. Costs of the action and attorney's fees;

4. Treble Damages;

5. Pre- and post-judgment interest on all sums; and,

6. Any further equitable relief this court deems appropriate.

Respectfully submitted,

John Tennyson (BPR # 32777)

Tennyson & Wiggington
1800 West End Avenue
Suite 800
Nashville, TN 37219
(615) 506-3108
E-mail: jtennyson@nashville-law.com

*Attorney for Plaintiff*

-26-