Tennyson & Wiggington
Attorneys at Law
1801 West End Ave., Ste. 800
Nashville, TN 37203
(615) 506-3108
jtennyson@nashville-law.com

*Attorney for Plaintiff*

# In the United States District Court for the Middle District of Tennessee

| | |
|---|---|
| **OnSomble, Inc.,**<br><br>　　　　Plaintiff;<br><br>v.<br><br>**Maria O'Rourke,**<br><br>　　　　Defendant. | Civil Action No. 3:16-cv-493<br><br>**Judge Crenshaw**<br>**Magistrate Judge Newbern**<br><br>**Jury Trial Demanded** |

## Plaintiff's Response and Opposition to Defendant's Motion for Determination of Privilege and Accompanying Memorandum of Law

Page 1 of 16
Plaintiff's Response and Opposition to Defendant's Motion for Determination of Privilege and Accompanying Memorandum of Law
Case 3:16-cv-00493   Document 85   Filed 07/10/17   Page 1 of 16 PageID #: 981

Plaintiff OnSomble, Inc. ("Plaintiff") hereby requests that the Court deny Defendant Maria O'Rourke's ("Defendant") Motion for Determination of Privilege, finding that the documents at issue are *prima facie* privileged and must be returned or destroyed under the clawback request sent to Defendant pursuant to Fed. R. Civ. P. 26(b)(5)(B). Plaintiff states as follows:

1. Pursuant to Fed. R. Civ. P. 26(b)(5)(B), Plaintiff issued a clawback request to Defendant regarding three documents previously produced which are, on their face, privileged and have been produced under seal by Defendant as attachments to its Motion for Determination of Privilege.

2. In support hereof, Plaintiff relies on the accompanying memorandum of law, the declaration of Rebekah Mathis-Stump (filed contemporaneously herewith), the declaration of James Wiggington (filed contemporaneously herewith), and the record in this matter.

3. The undersigned certifies that the parties have NOT met and conferred about this issue. While Defendant provided a response to Plaintiff in a letter dated June 21, 2017, Defendant's letter raised issues regarding the identity and status of individuals named in the documents and determination of factual circumstances surrounding the issuance of said documents which required additional research and confirmation from Plaintiff. Defendant further made representations that any motion for determination of privilege would be filed either on June 23, 2017, or early the following week. A further letter from Defendant was sent late in the day on June 23, 2017, indicating an intent to file a motion for determination of privilege the following day, Saturday, June 24, 2017. No persons were in the office to receive such communications.

4. A letter sent three days before filing the motion and a letter on the weekend of filing the

Page 2 of 16
Plaintiff's Response and Opposition to Defendant's Motion for Determination of Privilege and Accompanying Memorandum of Law
Case 3:16-cv-00493   Document 85   Filed 07/10/17   Page 2 of 16 PageID #: 982

motion cannot possibly constitute a good-faith effort to meet and confer.

5. There is no reason to think that the parties would not resolve their differences relating to the three documents at issue. They are all privileged communications between consultants or employees of OnSomble, Inc. and counsel for OnSomble, Inc. for the purposes of seeking legal advice, and once Defendant is made aware of the identities and facts surrounding the documents, the parties should easily be able to resolve any differences regarding the documents.

## Memorandum of Law

Plaintiff submits this memorandum of law in support of its Response and Opposition to Defendant's Motion for Determination of Privilege.

### Introduction

Defendant's Motion for Determination of Privilege pursuant to Fed. R. Civ. P. 26(b)(5)(B), is misplaced as the documents at issue are on their face privileged communications. First, all three documents were forwarded to a third party who was acting in a consulting capacity pursuant to *Upjohn Co. v. United States*, 49 U.S. 383, 387 (1981) and who is protected by the *Kovel* Doctrine. *United States v. Kovel*, 296 F.2d 918, 923 (2d Cir. 1961). Second, all of the communications with Plaintiff's counsel were for the explicit purpose of seeking legal advice. Third, Plaintiff's procedures for preventing inadvertent disclosure of these documents were adequate and reasonable, and the disclosure of said documents was inadvertent. Plaintiff had no reason to invoke attorney-client privilege prior to production as Plaintiff was unaware of the inadvertent disclosure

Page 3 of 16
Plaintiff's Response and Opposition to Defendant's Motion for Determination of Privilege and Accompanying Memorandum of Law
Case 3:16-cv-00493   Document 85   Filed 07/10/17   Page 3 of 16 PageID #: 983

until reviewing further documents for production and discovering that the documents at issue contain privileged conversations.

Defendant improperly seeks to use privileged documents for her own benefit and wrongly claims that disclosure to someone acting in a consulting capacity and an inadvertent disclosure waive the privilege. These arguments are baseless. Plaintiff requests that the Court deny Defendant's Motion in its entirety.

**Relevant Facts**

Three documents are at issue in Defendant's Motion for Determination of Privilege. They are:

a. an email from Shawn Mathis to Rebekah Mathis-Stump, dated May 15, 2013, with the subject "FW Bullet points to Conversation," and bearing Bates label nos. 001921-23, forwarding attorney-client privileged communications, attached to Defendant's Motion under seal as Exhibit 1 ("Exhibit 1");

b. an email from Mr. Mathis to Ms. Mathis-Stump, dated May 17, 2013, with the subject "Fwd: Fiduciary Matters Impacting OnSomble's Shareholders," and bearing Bates label nos. 001927-29, attached to Defendant's Motion under seal as Exhibit 2 ("Exhibit 2"); and,

c. an email from Mr. Mathis to Ms. Mathis-Stump, dated June 3, 2013, with the subject "Fwd: MOR/Krebs Revised documents (OnSomble)," bearing the Bates label nos. 001932-33, attached to Defendant's Motion under seal as Exhibit 3 ("Exhibit 3").

In support of her Motion, Defendant claims that Ms. Mathis-Stump has never been an

Page 4 of 16
Plaintiff's Response and Opposition to Defendant's Motion for Determination of Privilege and Accompanying Memorandum of Law
Case 3:16-cv-00493   Document 85   Filed 07/10/17   Page 4 of 16 PageID #: 984

OnSomble employee, but ignores the import of Ms. Mathis-Stump's critical and ongoing consulting role with the company and the *Kovel* doctrine (discussed below). Since 2008, Ms. Mathis-Stump has been a retained consultant for OnSomble who operated as a functional equivalent to an employee. As stated in her declaration, attached hereto, Ms. Mathis-Stump had many responsibilities with OnSomble and continues to act in that capacity. Declaration of Rebecca Mathis-Stump ("Mathis-Stump Decl.") ¶5-14). Her role was not limited to "marketing and communications" and "a new executive coaching product." Def.'s Mem. 9, ECF No. 78. In 2013, her responsibilities included recording all investor transactions, preparing stock certificates, writing blog posts, drafting business plans, maintaining the digital archive of company files, maintaining the company e-mail server, maintaining the company website, marketing, document preparation, advising on product and business strategy, leading company projects, research, coaching, and jointly planning a new executive coaching product. Mathis-Stump Decl. ¶ 5-14.

It is inconceivable to Plaintiff that Defendant would not be aware of Ms. Mathis-Stump's involvement with OnSomble as she was instrumental in negotiating the purchase of Defendant's company, Role-Based Practice Solutions, and she worked closely with Defendant regarding role-clarity issues and the role of role-clarity among OnSomble executives, including the CEO. Mathis-Stump Decl. ¶ 11. Dr. O'Rourke even recommended that Ms. Mathis-Stump prepare a job description for the CEO of OnSomble and coach him on several topics, including communication, strategic planning, and clarity. *Id.* at ¶ 11. This request goes far beyond a "marketing and communications" consultant and reflects deep involvement in the foundational planning of OnSomble, showing that Defendant was well aware of Ms. Mathis-Stump's direct involvement with the company.

Page 5 of 16
Plaintiff's Response and Opposition to Defendant's Motion for Determination of Privilege and Accompanying Memorandum of Law
Case 3:16-cv-00493   Document 85   Filed 07/10/17   Page 5 of 16 PageID #: 985

Under the *Kovel* Doctrine, communications with non-employees regarding information sought from or by attorneys can be protected by attorney-client privilege. *United States v. Kovel*, 296 F.2d 918, 923 (2d Cir. 1961), *see also Noggle v. Marshall*, 706 F.2d 1408, 1413 (6th Cir. 1983). Further expanded in *Upjohn Co. v. United States*, 49 U.S. 383 (1981), the Supreme Court rejected the control group test for attorney-client privilege, instead applying such privilege more broadly. *Upjohn*, 49 U.S. at 397. Since *Upjohn*, federal courts have consistently held that third-party contractors, even ones far less involved in business dealings with the parent company than Ms. Mathis-Stump, are protected under attorney-client privilege. *See, e.g., Export-Import Bank of the U.S. v. Asia Pulp & Paper Co.*, 232 F.R.D. 103, 114 (S.D.N.Y. 2005) (applying the *Kovel* doctrine to financial consultants); *RoDa Drilling Co. v. Siegal*, No. 07-cv-00400-GFK-FHM, Doc. 238, *2 (N.D. Okla. 2009) (applying *Kovel* to accountants); *American Manufacturers Mutual Insurance Co. v. Payton Lane Nursing Home, Inc.*, No. 05-cv-5155 (SJF) (AKT), *5 (E.D.N.Y. Dec. 11, 2008) (applying *Kovel* to construction consultants); *Coorstek, Inc. v. Reiber*, 2010 WL 1332845, at *4 (D. Colo. April 5, 2010) (applying *Kovel* to invention consultants); *Leone v. Owsley*, No. 12-cv-02961-PAB-KMT, at *7 (D. Colo. May 29, 2013) (applying *Kovel* to insurance brokers); *Hadjih v. Evenflo Co.*, No. 10-cv-02435-RBJ-KMT, Doc. 116, *8 (D. Colo. May 31, 2012) (applying *Kovel* to public relations consultants). Even if Ms. Mathis-Stump had only been a marketing consultant who was assisting with a new executive coaching product, as Defendant has erroneously alleged, communications with Ms. Mathis-Stump regarding legal services would *still* be protected under the *Kovel* doctrine. However, as Ms. Mathis-Stump has routinely provided services ranging from marketing to finance to business planning, legal communication involving her would not violate attorney-client privilege.

Page 6 of 16
Plaintiff's Response and Opposition to Defendant's Motion for Determination of Privilege and Accompanying Memorandum of Law
Case 3:16-cv-00493   Document 85   Filed 07/10/17   Page 6 of 16 PageID #: 986

The second mischaracterization is that Defendant claims that the documents all relate to a growing dispute between Plaintiff and Defendant in May and June 2013. While they do relate to the dispute, they are also explicitly privileged attorney-client communications related to that dispute. Def.'s Mem., Exs. 1-3, ECF No. 78. Further, Defendant references the promissory note that is discussed in some of the privileged emails. This is a red herring argument because it is wholly unrelated to the instant case or dispute. Thus, such a "relevancy" argument is invalid.

The third mischaracterization is that Defendant asserts that the documents do not appear to be providing legal advice to Plaintiff or seeking information necessary to provide legal advice to Plaintiff. This is false. The documents are from Mr. Abdou, counsel for Plaintiff, seeking information about communications regarding the 2013 legal dispute and offering advice about such. Later in the Memorandum, Defendant admits that Ruba Qashu was included in the e-mail chain. Ruba Qashu is neither a director nor manager of Plaintiff. Ruba Qashu is only affiliated with Plaintiff as counsel. Ruba Qashu's inclusion alone indicates that these e-mails were regarding Mr. Abdou's involvement in the e-mail chain as legal counsel, not as a director. Def.'s Mem., Exs. 1-3, ECF No. 78.

Additionally, Defendant has mischaracterized the content of the e-mails.

**DOCUMENT 1:** While Defendant is correct that this starts with a forwarded conversation between Mr. Abdou and Mr. Krebs (another indication that this is a conversation as attorney, not director, because Mr. Abdou was negotiating with counsel for Defendant on behalf of Plaintiff as an attorney), the e-mail chain between Mr. Abdou and Mr. Mathis includes Mr. Abdou providing advice on how to proceed during settlement negotiations and asking Mr. Mathis to provide a response to his advice. It is an e-mail from an attorney, forwarding a conversation with another

Page 7 of 16
Plaintiff's Response and Opposition to Defendant's Motion for Determination of Privilege and Accompanying Memorandum of Law
Case 3:16-cv-00493   Document 85   Filed 07/10/17   Page 7 of 16 PageID #: 987

attorney, giving bullet points on the content of the conversation between the attorneys and advice regarding the next steps regarding the settlement negotiations, and asking for a response to the advice regarding the next steps during the settlement negotiations. It is a textbook example of attorney-client privilege.

**DOCUMENT 2:** While Defendant is correct that it starts with an e-mail from Mr. Mathis to Defendant, the email was an attempt by Mr. Mathis to reach out to Defendant and resolve her legal claims. The rest of the document contains discussions between Mr. Mathis and Mr. Abdou regarding Mr. Abdou's legal opinions and advice about Mr. Mathis's attempts to resolve Defendant's legal claims.

**DOCUMENT 3:** This document begins with an e-mail from Mr. Krebs, dated June 3, 2013, to Mr. Abdou and Ms. Qashu, with a copy to Defendant. Mr. Abdou forwarded this e-mail to Mr. Mathis, asking him to review the agreement along with a few annotated changes and points about negotiation. Mr. Mathis responded, copying Mr. Smith, in addition to Ms. Qashu (Mr. Abdou's associate attorney). Mr. Mathis then forwarded the conversation to Ms. Mathis-Stump. This is privileged information. It is an e-mail chain between the attorneys, sent to the client and exchanged with employees and those acting as employees, close to the matter.

### Inadvertent Disclosure

Plaintiff encountered some technical difficulties with its document production in November 2016 and was only able to produce a subset of what it has now produced (and continues to produce). Wiggington Decl. ¶ 6. At the time of production, Plaintiff did not object on privilege grounds because Plaintiff did not believe there to be any responsive documents that were privileged

Page 8 of 16
Plaintiff's Response and Opposition to Defendant's Motion for Determination of Privilege and Accompanying Memorandum of Law
Case 3:16-cv-00493   Document 85   Filed 07/10/17   Page 8 of 16 PageID #: 988

(as evidenced by the emails that were disclosed, that relate to the Purchase Agreement dispute which is not at issue in the present case).

Plaintiff's first document production was made in late November. A hard copy production was delivered to Defendant. Wiggington Decl. ¶ 7. Prior to delivery, Plaintiff's counsel scanned a copy of the entire production. *Id.* at ¶ 4. On December 9, 2016, Defendant sent a letter to Plaintiff's counsel, requesting Bates numbers be added to the documents among other issues. *Id.* at ¶ 7. Using Adobe Acrobat Pro, Plaintiff's counsel affixed Bates numbers to the documents in the scanned copy, starting with 000001, burned the copy to a disc, and delivered it by USPS to Defendant. *Id.* at ¶ 8.

Plaintiff delivered its second production of documents on April 24, 2017. Wiggington Decl. ¶ 12. Plaintiff contracted with a company to provide electronic discovery services. *Id.* at ¶ 9. The company provided documents from the private server used to store documents; however, due to the massive number of e-mails to be reviewed and an issue with the review software used to sort the e-mails, the documents from the server were sent on a compact disc before the e-mails. *Id.* at ¶ 10. This time, Plaintiff adopted the prefix "ONS" on its documents in the same way that Defendant had prefixed documents "MOR". *Id.* at ¶ 11. Due to technical issues and time constraints, counsel for Plaintiff delivered the disc to Defendant without first verifying the content of the disc. *Id.* at ¶ 12.

Defendant sent a letter to Plaintiff detailing alleged deficiencies in the document production and additionally indicated that Defendant had never received the Bates labeled disc with the documents first produced in November. Wiggington Decl. ¶ 13. Plaintiff produced another document production on May 22, 2017. *Id.* at ¶ 14. Two files were included on the disc.

Page 9 of 16
Plaintiff's Response and Opposition to Defendant's Motion for Determination of Privilege and Accompanying Memorandum of Law
Case 3:16-cv-00493   Document 85   Filed 07/10/17   Page 9 of 16 PageID #: 989

*Id.* First, the original Bates stamped production was reproduced. *Id.* Second, a new production was added as a separate file. *Id.*

On May 30, 2017, a misunderstanding between the company hired to do electronic discovery services and Plaintiff resulted in Plaintiff believing that on the disc produced on April 24, 2017, a digital copy of the entire mail server belonging to Plaintiff had been included. Wiggington Decl. ¶ 16. This would have included all e-mails, including non-responsive and privileged e-mails. Counsel for Plaintiff immediately sent a letter to Defendant attempting to claw back the perceived privileged documents. *Id.* at ¶ 17. The error was discovered, and the request was dropped; however, Plaintiff reinvestigated its old document productions for any other errors. *Id.* at ¶ 18-19.

On or about June 16, 2017, upon review of the document productions, Plaintiff identified three documents in the original Bates labeled documents which were privileged but had inadvertently been produced. Wiggington Decl. ¶ 20. Plaintiff immediately drafted a letter invoking a clawback request, and Defendant has sequestered those documents until such time as the Court makes a determination of privilege. *Id.* at ¶ 21.

### I. The Documents are Privileged

There is no question that the documents at issue are privileged.

### A. Ms. Mathis-Stump was and Remains a Consultant to OnSomble, Inc. who Acted as a "Functional Equivalent" of an Employee Under the *Kovel* Doctrine

As discussed above, Defendant mischaracterized the role of Ms. Mathis-Stump, who is an

Page 10 of 16
Plaintiff's Response and Opposition to Defendant's Motion for Determination of Privilege and Accompanying Memorandum of Law
Case 3:16-cv-00493   Document 85   Filed 07/10/17   Page 10 of 16 PageID #: 990

integral part of the OnSomble team and whose ongoing consultant responsibilities while working for OnSomble were and are multifunctional, putting her squarely within the "functional equivalent" role of an employee under the *Kovel* doctrine. As such, the privileged email communications to Ms. Mathis-Stump' are entitled to protection under the *Kovel* doctrine, Defendant's arguments are factually and legally wrong. *United States v. Kovel*, 296 F.2d 918, 923 (2d Cir. 1961).

### B. Mr. Mathis was Seeking Legal Advice

In its Memorandum, Defendant seems to imply that because Mr. Mathis was not seeking legal advice from Ms. Mathis-Stump, this should act as waiver. This position is unsupported by law. The *Kovel* doctrine does not require a client to be seeking legal advice from employees, contractors, accountants, or consultants. *Kovel*, 296 F.2d at 923.

### C. Mr. Abdou was Providing Legal Advice

Mr. Abdou was chief counsel for Plaintiff at the time, and even the most cursory glance at the documents makes apparent that the content therein is legal, not business, advice. As discussed above, the fact that Ruba Qashu was also included in the conversation should be a sign that Mr. Abdou was acting as lawyer in these particular documents. Otherwise, there would be no reason to include Ms. Qashu, Mr. Abdou's colleague and counsel to Plaintiff, as she was not a shareholder of OnSomble.

In the second email, Messrs. Mathis and Abdou, in the text of the conversation, refer to Mr. Abdou's "legal opinion" and Mr. Mathis's lack of qualification to form such an opinion.

Page 11 of 16
Plaintiff's Response and Opposition to Defendant's Motion for Determination of Privilege and Accompanying Memorandum of Law
Case 3:16-cv-00493   Document 85   Filed 07/10/17   Page 11 of 16 PageID #: 991

Furthermore, the e-mail chain is a discussion between Mr. Mathis and Mr. Abdou about the legal implications of Defendant's breach of her fiduciary obligations along with Mr. Mathis's understanding of the legal issue.

With respect to the first and third documents, both are privileged in the same way. Defendant is correct that they both relate to the promissory note; however, they do not relate to a business discussion regarding the promissory note. Both begin with a conversation between attorneys, Messrs. Abdou and Krebs, and end with Mr. Abdou discussing with Mr. Mathis legal strategy in negotiating terms of a potential settlement. *These are settlement negotiations.* Mr. Mathis describes some of his business strategy; however, this is part and parcel to letting his attorney know the acceptable terms of a potential agreement. Defendant curiously claims that "[h]ad Mr. Abdou been a businessman and not also a lawyer, his advice would have been the same." Def.'s Mem. 11, ECF No. 78. However, if Mr. Abdou had been a businessman and not also a lawyer, he would not have been negotiating terms for Mr. Mathis, and his response would have surely been that he is not a lawyer and that Mr. Mathis should seek advice from an attorney.

## II. There Has Been No Waiver of the Privilege

### A. Plaintiff's Efforts to Prevent Disclosure of the Documents were Reasonable

Plaintiff's steps to prevent the disclosure of privileged documents have been more than reasonable. The documents in question were part of disclosures which were thousands of pages long. Wiggington Decl. ¶ 8. Each was personally reviewed by an attorney for Plaintiff at some point in the litigation. *Id.* at ¶ 4. The initial document production, the initial Bates labeled document production, and the production on May 22, 2017, included the same documents. *Id.* at ¶ 8.

Page 12 of 16
Plaintiff's Response and Opposition to Defendant's Motion for Determination of Privilege and Accompanying Memorandum of Law
Case 3:16-cv-00493   Document 85   Filed 07/10/17   Page 12 of 16 PageID #: 992

Defendant claims that she did not receive the initial Bates labeled document production. Def.'s Mem. 6, ECF No. 78. The inclusion of the disputed documents was a simple clerical error. They should never have been included in the final document and were accidentally added in the final compilation of the document when preparing to send the production. A privilege log has, until now, been unnecessary because none of Defendant's document requests have involved privileged documents. *Indeed, the documents at issue here are not responsive to any of Defendant's discovery requests.*

In its motion, Defendant relies exclusively on *First Tech. Capital, Inc. v. JP Morgan Chase Bank, N.A.*, 2013 U.S. Dist. LEXIS 185763, at *5 (E.D. Ky. Dec. 10, 2013). Def.'s Mem. 6, ECF No. 78. In that case, unreasonableness was found because of the rapidity of the review process.

> "Each document received, on average, only 9.84 seconds of review. Having looked at the 45 pages carefully, the Court is dubious that 9.84 seconds, about the time of an Olympic 100 meters race, is a reasonable investment within which to identify a document, consider author and recipients, appreciate subject matter, assess for discovery responsiveness, assess for KRE 505 and federal work-product application, and finally make the decision to withhold or produce. […] The rapidity of review indicates an unreasonably small temporal component to the process."

*Id.* at *5. Additionally, in *First Tech*, the documents produced were ostensibly responsive, their only reason for being withheld was on privilege grounds. *Id.* at *7. The documents in the instant case were not to be produced because they were not responsive. As such, the additional scrutiny of requiring a privilege log is not necessary.

Further, the privileged documents in *First Tech* were a full forty-five pages of an only 1,500-page document production. *Id.* at *3. In the instant case, only eight pages of 2,548 pages are at issue. Even then the Court in *First Tech* did not base its decision upon a privilege log or internal

Page 13 of 16
Plaintiff's Response and Opposition to Defendant's Motion for Determination of Privilege and Accompanying Memorandum of Law
Case 3:16-cv-00493  Document 85  Filed 07/10/17  Page 13 of 16 PageID #: 993

index of documents, rather the Court squarely identified the haste with which the documents were reviewed as the reason for the waiver of privilege. *Id*. at *5. Here, the situation is distinguishable in that the privileged documents are not responsive to any request by Defendant and were inadvertently included.

### B. Plaintiff's Efforts to Rectify the Error were Reasonable

As discussed *supra* at 9, the issue with the April 24 production involved a miscommunication with the company hired to complete e-discovery in that Plaintiff's entire e-mail server had been downloaded onto the produced disc. This turned out not to be the case. After this issue, however, Plaintiff decided to review its document production for any other discrepancies. Wiggington Decl. ¶ 19. This is when the privileged documents were finally discovered. *Id*. at ¶ 20. Plaintiff immediately sent a clawback letter to Defendant regarding the documents. *Id*. at ¶ 21. Defendant argues that she had to guess as to the basis for Plaintiff's claim of privilege; however, in the letter, Plaintiff clearly stated that it was under the attorney-client privilege as communication between Plaintiff and its attorney. *Id*. at ¶ 17. In her "meet and confer" letter, Defendant did not even raise the issue of potential waiver for forwarding the e-mails to Ms. Mathis-Stump. Ex. 1. Rather, Defendant raised an issue of potential waiver for forwarding the e-mails to Mr. Smith, the CFO of Plaintiff at the time. *Id*. at ¶ 5. Before filing its motion, Defendant apparently remembered that Mr. Smith was an employee of Plaintiff and switched to arguing about Ms. Mathis-Stump. Def.'s Mem. 2, ECF No. 78. Furthermore, in a clawback request, Plaintiff need only set forth the factual basis establishing privilege and need not explore every avenue in which Defendant my claim that privilege has been waived. *See* Fed. R. Civ. P. 26(b)(5)(B).

Page 14 of 16
Plaintiff's Response and Opposition to Defendant's Motion for Determination of Privilege and Accompanying Memorandum of Law
Case 3:16-cv-00493 Document 85 Filed 07/10/17 Page 14 of 16 PageID #: 994

### III. Plaintiff Has Not Waived Privilege by Failing to Assert It

Plaintiff never objected to Defendant's discovery requests on privilege grounds because Plaintiff did not believe any privileged documents to be implicated by the document requests. Subsequently, there was no reason to provide a privilege log.

### Conclusion

For the foregoing reasons, the Court should find that the three documents attached as Exhibits 1, 2, and 3 to the Defendant's Motion for Determination of Privilege are privileged and that privilege has not been waived.

_____
John Tennyson (BPR# 32777)
Tennyson & Wiggington
1801 West End Ave., Ste. 800
Nashville, TN 37203
(615) 506-3108
jtennyson@nashville-law.com

Page 15 of 16
Plaintiff's Response and Opposition to Defendant's Motion for Determination of Privilege and Accompanying Memorandum of Law
Case 3:16-cv-00493   Document 85   Filed 07/10/17   Page 15 of 16 PageID #: 995

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing is being electronically filed and will be furnished via CM/ECF on this 10th day of July, 2017, to:

Rick Sanders
Aaron & Sanders, PLLC
810 Dominican Dr.
Suite 208
Nashville, TN 37228
(615) 734-0770
rick@aaronsanderslaw.com

Paul R. McAdoo
Aaron & Sanders, PLLC
810 Dominican Dr.
Suite 208
Nashville, TN 37228
(615) 577-0991
paul@aaronsanderslaw.com

*/s/ John Tennyson*
John Tennyson (BPR# 32777)
Tennyson & Wiggington
1801 West End Ave., Ste. 800
Nashville, TN 37203
(615) 506-3108
jtennyson@nashville-law.com

Page 16 of 16
Plaintiff's Response and Opposition to Defendant's Motion for Determination of Privilege and Accompanying Memorandum of Law
Case 3:16-cv-00493   Document 85   Filed 07/10/17   Page 16 of 16 PageID #: 996